UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL S. MROFCHAK, ) | CASE NO. 1:18CV2748 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | |
| ANDREW M. SAUL, ) | |
| COMMISSIONER OF SOCIAL ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, ) | AND ORDER |
| ) | |
| Defendant. ) | |

Plaintiff Michael S. Mrofchak ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on March 13, 2019, Plaintiff asserts that the administrative law judge ("ALJ") failed to properly consider Social Security Ruling ("SSR") 02-1p[1], violated SSR 16-3p in determining his credibility, and improperly found that he could return to past relevant jobs. ECF Dkt. #15. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES the instant case in its entirety WITH PREJUDICE.

## I. PROCEDURAL HISTORY

In December of 2015, Plaintiff filed applications for DIB and SSI, alleging disability beginning December 30, 2008. ECF Dkt. #12 ("Tr.")[2] at 201-205. In his applications, Plaintiff alleged disability due to: disc degeneration, spinal stenosis, gout, and arrhythmia. *Id.* at 228.

---

[1] SSR 02-1p has been rescinded and replaced by SR 19-2p, effective May 20, 2019. ssa/gov/OP_Home /rulings/di/01/SSR2002-01-di-01.html. SSR 02-1p applies in the instant case as Plaintiff's applications were filed in December of 2015, well within the effective date of SSR 02-1p.

[2] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

1

Plaintiff's reported height is 72 inches and his self-reported weight is 247 pounds. *Id*. at 65. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 75-116.

On October 11, 2016, Plaintiff requested an administrative hearing. Tr. at 149. On November 27, 2017, a hearing was held before an ALJ in which Plaintiff and a vocational expert ("VE") testified. *Id.* at 31.

The ALJ issued her decision on May 11, 2018, finding Plaintiff not disabled and denying his applications for DIB and SSI. *Id.* at 15-25. Plaintiff requested a review of the hearing decision, and on October 3, 2018, the Appeals Council denied review. *Id.* at 1-4. On November 28, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties thereafter consented to the jurisdiction of the undersigned. ECF Dkt. #14. On March 13, 2018, Plaintiff filed a merits brief, and Defendant filed a merits brief on May 28, 2019. ECF Dkt. #s 15, 18. Plaintiff filed a reply brief on June 10, 2019. ECF Dkt. #19.

## II. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On May 11, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 15-25. She found that Plaintiff had not engaged in substantial gainful activity since December 30, 2008, the alleged onset date. *Id.* at 18. The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease ("DDD"), obesity, and (as of July 2017) coronary artery disease. *Id.* She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a)[3], except for the following limitations: occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently stoop, kneel, and crouch; and occasionally crawl. Tr. at 19.

Based upon the testimony of the VE, the ALJ found that a person with the same age,

---

[3] 20 C.F.R. § 416.901 *et seq.* governs SSI determinations, while 20 C.F.R. § 404.1501 *et seq.* governs DIB determinations. These regulations are virtually identical.

education, work experience, and RFC, could perform Plaintiff's past relevant work as a production supervisor, project engineer, or communications engineer. *Id.* at 24. Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 30, 2008 through the date of her decision, May 11, 2018. *Id.* at 25.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6thCir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### **V.** **LAW AND ANALYSIS**

Plaintiff raises three challenges to the ALJ's decision of May 11, 2018. ECF Dkt. #15. Plaintiff alleges that: (1) the ALJ failed to properly consider SSR 02-1p in evaluating his obesity; (2) the ALJ violated SSR 16-3p in determining his credibility; and (3) the ALJ improperly found that he could return to his past relevant jobs of production supervisor, project engineer, and communications engineer. *Id.*

4

### A. Obesity

Plaintiff first complains that the ALJ only briefly considered SSR 02-1p in evaluating his obesity, did not mention any of the weights recorded by his doctors in his medical records, and did not assess his obesity in conjunction with his musculoskeletal, cardiac, and respiratory problems. ECF Dkt. # 15 at 10-13. Plaintiff contends that the ALJ required a medical doctor in order to evaluate his medical records and she "played doctor" by substituting her judgment for that of a medical doctor when reviewing the medical evidence concerning his heart catheterization and diagnosis of cardiac problems. *Id.* at 12-13.

The Court first notes that Plaintiff did not allege obesity as a basis for disability in his DIB or SSI applications. Tr. at 228. Further, an ALJ has a special, heightened duty to develop the record only when a claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. App'x. at 459 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir.1983)). Plaintiff in this case was represented by counsel at the hearing. *Id.* at 31. Accordingly, the ALJ did not have a heightened duty to develop the record.

In addition, the ALJ cited to SSR 02-1p in her decision and indicated that the Ruling recognized that obesity can be a medically determinable severe impairment that leads to and complicates chronic diseases of the cardiovascular, respiratory, and musculoskeletal systems. Tr. at 19. SSR 02-1p indicates as much. The ALJ also noted that disturbances of those systems can be a major cause of disability in those with obesity and therefore she must consider obesity when determining whether the individual has a listing-level impairment or combination of impairments. Tr. at 19. The ALJ further found that she must also consider and evaluate Plaintiff's obesity at other steps in the sequential evaluation, including Plaintiff's RFC and she must consider the additional and cumulative effects of obesity in doing so. *Id.* This also tracks the language of SSR 02-1p. The ALJ specifically identified Plaintiff's obesity as a severe impairment at Step Two and specifically addressed obesity in conjunction with her Step Three findings. *Id.* at 18-19. At Step Four, the ALJ also outlined the treatment records from Dr. Mahjoub, who indicated that

Plaintiff's history of smoking and obesity were his main cardiac risk factors. *Id.* at 22. Also in conjunction with Step Four, the ALJ specifically indicated that

> the claimant's weight has been at obese levels since the alleged onset date. Specifically, the treatment records indicate that the claimant is six feet and one inch tall, and his weight has been as high as 262 pounds, and that his body mass index reading has been as high as 34.5. (7F/3). As outlined previously, obesity is a medically determinable impairment that commonly leads to, and often complicates, chronic diseases of the cardiovascular and musculoskeletal body systems. Therefore, it is reasonable to assume that the claimant's weight contributed to the limitations associated with the previously discussed severe impairments.

*Id.* at 23. The ALJ also noted that Plaintiff's weight was in the obese range when she discussed Plaintiff's back pain and cardiac evaluation. *Id.* She further concluded that postural limitations were warranted due to Plaintiff's cervical, thoracic, and trapezius issues, as well as his obesity. *Id.* at 23-24.

SSR 02-1p does not require a specific mode of analysis by an ALJ and it does not establish that obesity is a severe impairment or the impact that it has on functional limitations. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006). SSR 02-1p directs an ALJ to consider a claimant's obesity in combination with his other impairments throughout the sequential analysis. *Miller v. Comm'r,* 811 F.3d 825, 835 (6th Cir. 2016). The ALJ in this case more than satisfied the requirement for evaluating Plaintiff's obesity. She cited to SSR 02-1p, indicated that she considered Plaintiff's obesity in conjunction with his cardiovascular and musculoskeletal issues, she noted that his weight had been at obese levels since the alleged onset date, and she explained that functional limitations were warranted based upon Plaintiff's symptoms, impairments, and the impact that obesity had on those impairments and his loss of maneuverability. Tr. at 23-24. For these reasons, Plaintiff's first assertion is without merit.

### **B.** **Credibility**

Plaintiff also contends that the ALJ erred in evaluating the medical evidence and in making a determination as to his credibility. ECF Dkt. #15 at 13-16. Plaintiff acknowledges that the ALJ detailed in her decision his treatment for compressed nerve at L4/5 and L5/S1, the strong narcotics he took for his back pain, his chest pain and dypsnea, and the total occlusion of

the right coronary vessel with collaterals along with hypokineseis of the interior wall. *Id.* at 15. However, Plaintiff asserts that the ALJ violated SSR 16-3p by failing to discuss the fact that his weights remained in the range of morbid obesity with BMIs over 30, and she did not discuss the possible relation of his obesity to all of his physical problems. *Id.* at 15-16.

The Court also finds no merit to this assertion. As explained in the prior section, the ALJ specifically noted that Plaintiff's weight was at obese levels since his alleged onset date. Tr. at 23. She cited to SSR 16-3p and SSR 02-1p, acknowledged that obesity was a medically determinable impairment that commonly leads to and can complicate chronic diseases of the heart and musculoskeletal system, and she assumed that Plaintiff's weight contributed to his limitations. *Id.* She also noted that Plaintiff would have trouble maneuvering due to his weight. *Id.* She reviewed his physical impairments and explained that the postural limitations that she determined for Plaintiff were supported by his impairments, including his weight, which she acknowledged was "at obese levels since the alleged onset date," and had been as high as 262 pounds, with a body mass index that at its highest was 34.5. *Id.*

While the ALJ may not have specifically discussed the intricacies of the relationship between Plaintiff's obesity and his other impairments, her decision reflects that she did consider this issue and the impact that Plaintiff's obesity had on his other impairments and on his ability to perform work activities. For these reasons, the Court finds no merit to Plaintiff's assertion.

### **C.** **Past Relevant Work**

Plaintiff's final assertion is that the ALJ erred at Step Four by finding that he could return to his past relevant work as a production supervisor, project engineer, and communications engineer. ECF Dkt. #15 at 16-19. Plaintiff contends that the ALJ determined, in accordance with the Dictionary of Occupational Titles ("DOT") and the VE's testimony, that these jobs were performed at the specific vocational preparation ("SVP") levels of 7 or 8, which require 2-4 years for a SVP 7 and 4-10 years for a SVP 8, respectively, in order to acquire the necessary skills for the job. *Id.* at 16. Plaintiff submits that the record is unclear as to whether he worked at any of the identified jobs for the sufficient period of time in order to acquire the necessarily transferable

skills required under the SVPs and the ALJ "poisoned the decision in this matter" when she testified at the hearing "as a vocational witness arguing" with the VE on the case. *Id*. at 18.

The Court questions the ALJ's recitation to and apparent reliance upon opinions of other VEs during her examination of the VE at the hearing and her line of questioning of the VE relating to other jobs existing in the national economy. Tr. at 56-58. However, this did not "poison" the ALJ's decision in the instant case because the ALJ stopped her analysis at Step Four by finding that Plaintiff could return to his past relevant work. *Id.* at 24. Thus, the relevant issue before the Court is whether the ALJ erred at Step Four by finding that Plaintiff had the appropriate number of years in order to meet the SVPs of level 7 and/or 8.

Defendant concedes in this case that Plaintiff did not perform in the jobs of project engineer and communications engineer long enough to satisfy the SVP 8 levels of 4-10 years. ECF Dkt. #18 at 5. However, Defendant asserts that Plaintiff performed the production supervisor job for the sufficient period of time in order to satisfy the SVP 7 level requiring 2-4 years in order to learn the job. *Id*. Defendant cites to Plaintiff's testimony at the ALJ hearing and Plaintiff's work history report in support. *Id.* at 5-6.

At the hearing, the VE testified that Plaintiff's past work included a production supervisor, which was listed in the DOT at 699.130-010 at a SVP of 7. Tr. at 53. He also identified past relevant jobs of project engineer at DOT 019.167-014 and communications engineer at DOT 003.061-030 at SVPs of 8. *Id.* When the ALJ asked the VE to assume a hypothetical individual similar to Plaintiff in age, education and work history, with the RFC that she determined for Plaintiff that she ultimately set forth in her decision, the VE responded that such a hypothetical individual could perform all of Plaintiff's past relevant work. *Id.* at 53-54.

As set forth by Defendant, Plaintiff indicated in his Work History Report that he supervised other people in his jobs at Alcoa, Molded Fiberglass, and General Motors. Tr. at 236-242. He reported that he worked at Alcoa from July 2008 through December 2008, which constitutes 6 months. *Id*. at 236. As to Molded Fiberglass, Plaintiff reported that he worked there and supervised people from March 2007 through August 2007, which equals 6 months. *Id*. For General Motors, Plaintiff listed the company twice on his Work History Report and reported that

8

he worked there from March 1999 through December 1999, which is 10 months, and again from September 2003 through December 2003, which is 4 months. *Id.* The total amount worked supervising people for these employers is 26 months (6 months + 6 months + 10 months + 4 months), two months over the minimum 2 years necessary for a SVP 7.

Accordingly, the Court finds that while the ALJ erred in her Step Four finding that Plaintiff could perform his past relevant jobs of project engineer and communications engineer because of the SVP 8 level, this error was harmless because she also set forth the project supervisor job which met Plaintiff's RFC and had the SVP 7 level which Plaintiff met. *See Adams v. Colvin,* 1:12CV2338, 2014 WL 185783, at *6 (Jan. 16, 2014)(ALJ erred at Step Four in finding claimant could perform past relevant work as newspaper delivery person, but error was harmless because he also identified jobs of machine tender and assembler as past relevant wok to which claimant could return); *see also Casey v. Astrue*, No. 2:08–CV–095, 2009 WL 613582, at *5 (E.D.Tenn. Mar.9, 2009), unpublished (while ALJ Step Four finding that claimant could return to past relevant work as an office cleaner was harmless error because "substantial evidence support's [sic] the ALJ's alternate conclusion that plaintiff could also return to her prior assembly work.").

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: March 11, 2020  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

9